IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE SUBPOENA:<br><br>SPARTANBURG REGIONAL HEALTHCARE SYSTEM, on behalf of itself and others similarly situated,<br><br>Plaintiff,<br>v.<br><br>HILLENBRAND INDUSTRIES, INC., HILL-ROM, INC., and HILL-ROM COMPANY, INC.,<br><br>Defendants. | Civil Action No. 05-MC-10234 |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO MODIFY THIRD-PARTY SUBPOENA

Bain & Company ("Bain"), by and through its attorneys, hereby submits this Memorandum of Law in Support of its Motion to Modify Third-Party Subpoena, in connection with the subpoena duces tecum (the "Subpoena") issued by this Court and served by the Plaintiff in an action pending in the U.S. District Court for the District of South Carolina and captioned, *Spartanburg Regional Healthcare System, on behalf of itself and others similarly situated, v. Hillenbrand Industries, Inc., Hill-Rom, Inc., and Hill-Rom Company, Inc.*, Civil Action No. 7:03-2141-26.

### INTRODUCTION

Non-party Bain seeks relief from an overzealous quest for third-party discovery that has spanned the course of more than five months. With no apparent exercise of discretion as to relevance, plaintiff Spartanburg Regional Healthcare System ("Spartanburg") served a third-party subpoena on Bain, requesting every single document relating to consultant Bain's work for

its client, Hillenbrand, over the last *twenty years*. Bain made timely objection to the breadth of the Subpoena, but nevertheless produced documents that reasonably related to Hospital Beds, Specialty Beds, and/or Architectural Products, the subject matter of the underlying litigation.

To date, Bain has produced four boxes of hard copy documents and four CDs totaling over 11,000 pages of documents; Bain has re-produced certain documents in electronic format that it had previously produced in hard copy; Bain has entertained countless follow-up demands from issuing counsel far beyond documents conceivably relating to the subject matter of the underlying lawsuit. More than five months after issuing the Subpoena, Plaintiff now demands yet another production of documents, including several categories of documents raised for the very first time. Any further review or production of documents wholly unrelated to the underlying litigation would place serious and undue burden on Bain. Bain therefore requests that this Court exercise discretion where the Plaintiff has not, and narrow the scope of the Subpoena to the subject matter of the underlying litigation.

## FACTUAL BACKGROUND

### Spartanburg Indiscriminately Requests Twenty Years of Bain Documents

On March 28, 2005, Spartanburg served Bain with a third-party subpoena, relating to Bain's client, Hillenbrand Industries, Inc., a party to the above-captioned litigation. Among other categories of documents, the subpoena sought "[a]ll documents relating to Hill-Rom…" from 1985 to the present. See Affidavit of Amanda J. Metts, Esq. ("Metts Aff."), ¶ 2, and Ex. "A" thereto. A review of the underlying Complaint revealed that the underlying litigation is an antitrust action brought by Spartanburg alleging antitrust violations surrounding the manufacturing and sales of hospital beds and specialty beds. See Metts Aff., ¶ 3 and Ex. "B" thereto. The Subpoena was not limited or tailored to the subject matter of the litigation. On

April 8, 2005, Bain objected to the Subpoena as "overly broad and unduly burdensome in that it seeks documents that are irrelevant to a claim or defense of any party and/or not reasonably calculated to lead to discovery of admissible evidence." See Metts Aff., ¶ 4, and Ex. "C" thereto.

Notwithstanding its objections, Bain produced all documents related to "Hospital Beds, Specialty Beds, and/or Architectural Products" – the products specified throughout the Subpoena, despite Plaintiff's initial request for "all documents." See Metts Aff., ¶¶ 5 and 6, and Ex. "D" and "E". Specifically, on April 29, 2005, Bain produced four boxes of post-1999 documents. See Metts Aff., ¶ 5, and Ex. "D" thereto. On May 13, 2005, Bain produced all pre-1999 documents related to Hospital Beds, Specialty Beds and/or Architectural Products. See Metts Aff., ¶ 6, and Ex. "E" thereto. Though the Subpoena did not mandate any particular production format, Spartanburg orally requested, after Bain's first production, that Bain produce the pre-1999 documents in their original (whether hard copy or electronic) format. Accordingly, Bain produced the pre-1999 documents electronically. Bain did not produce documents related to funeral services and products, such as caskets, cremation urns and funeral home financial services, or those limited to medical devices, such as surgical equipment, pumps and patient monitors, which are completely unrelated to Hospital beds, Specialty beds, and/or Architectural Products. See Metts Aff., ¶ 5 and 6, and Ex. "D" and "E" thereto.

### Bain's Continuing Efforts to Reasonably Comply with the Subpoena

Spartanburg next demanded that Bain re-produce all previously-produced post-1999 documents in electronic format. Despite Bain's position that it was not required to produce electronically absent any express request for electronic production,[1] and the additional work

---

[1] See Crossarm Co. v. Chem. Specialties, Inc., 2004 U.S. Dist. LEXIS 5381, 2-3 (D. Wis., 2004) (Rule 34 does not require a respondent to produce its evidence in the format in which the respondent stores it. "Neither the letter nor the spirit of Rule 34 mandates that a party is entitled to production in its preferred format." ).

required to identify and copy the previously-produced documents for re-production, Bain re-produced electronically all previously-produced spreadsheets and databases on June 30, 2005. See Metts Aff., ¶ 10, and Ex. "I" thereto.

Since Bain's several productions, Spartanburg has issued repeated demands for assurance that all documents were searched, and demanded production of documents that simply do not exist. For example, on June 3, 2005, Spartanburg demanded production of "Black Books," which were hard copy folders once used to preserve Bain's overhead projector slides. With the advent of electronic storage, Black Books have become obsolete and are no longer maintained under Bain's current document retention policy. See Metts Aff., ¶ 7, and Ex. "F" thereto. Bain responded in writing that Black Books were no longer maintained under its current document retention policy, which was produced. See Metts Aff., ¶ 8, and Ex. "G" thereto. Nevertheless, on June 20, 2005, Spartanburg again demanded explanation for the absence of Black Books in Bain's productions, necessitating an additional response by Bain. See Metts Aff., ¶ 9, and Ex. "H" thereto. This is just one such example of several months of "follow up" issues.

In both the June 3, 2005 and June 20, 2005 letters, Spartanburg requested further production of documents relating to the concepts of "joint incentives" and "bundling." See Metts Aff., ¶ 7 and 8, and Ex. "F" and "H" thereto. To the extent that any such documents related to Hospital beds, Specialty beds, and/or Architectural Products, they had been produced. Spartanburg, however, demanded production of all such documents, regardless of what products were being bundled. Once again, Bain attempted to compromise, and produced documents that relate to bundling/joint incentives, including those that do not expressly mention or discuss hospital beds, specialty beds, and/or architectural products, on August 19, 2005. Bain did not, however, produce documents relating to bundling/joint incentives of identifiable, unrelated

products such as funeral services, medical technologies and in-patient IT solutions, which in no way relates or potentially relates to the subject matter of the underlying litigation. See Metts Aff., ¶ 12, and Ex. "J" thereto.

### Spartanburg's Latest Demands

Despite several representations that the remaining "outstanding issues" with Bain's document product were limited and few, on August 29, 2005 -- five months after serving the Subpoena -- Spartanburg demanded production of several categories of documents, several of which it raised for the first time. These latest requests include, *inter alia*: (1) all documents, regardless of subject matter, from Bain's first engagement for Hillenbrand; (2) all documents concerning joint incentives and bundling, no matter that the products being bundled are unrelated to Hospital Beds, Specialty Beds, and/or Architectural Products; (3) all blank templates from Bain's general computer system that Bain used in its work for Hillenbrand; (4) Bain's "compensation records" in connection with its work for Hillenbrand; and (5) all documents that do not make reference to any product at all. See Metts Aff., ¶ 13.

Bain's efforts to cooperate and continuing compromises have been made in an effort to end its involvement in a litigation that does not concern it by avoiding, to the extent possible, the need for motion practice. Spartanburg's latest demands make clear, however, that it will not be satisfied short of production of twenty years of Bain documents, regardless of their relevance -- or irrelevance -- to the litigation. Unable to keep up with Plaintiff's continuing and ever-changing demands for additional documents, non-party Bain seeks protection and finality from this Court.

## ARGUMENT

### The Subpoena Should be Narrowed to the Subject Matter of the Litigation, Because the Burden on Non-Party Bain Outweighs Any Conceivable Benefit of the Production of Irrelevant Documents

The scope of discovery is not unlimited. See Gagne v. Reddy, 104 F.R.D. 454, 457 (D. Mass. 1984). All discovery is restricted to requests that are, at the least, "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). Further limitations on discovery are appropriate whenever "the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(2)(iii).

Even broader restrictions are appropriate when a nonparty is the target of discovery. See Blount International Ltd. v. Schuylkill Energy Resources Inc., 124 F.R.D. 523, 526 (D. Mass. 1989); Fed. R. Civ. P.45, 1991 Advisory Committee Notes, ¶1(1)("The purpose[ of the revision of Rule 45 is] to clarify and enlarge the protections afforded persons who are required to assist the court by giving information…"). To that end, "the court by which a subpoena was issued shall quash or modify the subpoena if it… subjects a person to undue burden." Fed. R. Civ. P. 45(c)(3)(A); Digital Equipment Corp. v. Currie Enterprises, 142 F.R.D. 8, 15 (D. Mass. 1991); Church of Scientology v. IRS, 138 F.R.D. 9, 10 (D. Mass. 1990)("A court that issues a subpoena has the inherent power to vacate it."). Concern for the burden thrust upon non-parties is a factor entitled to special weight in evaluating the burden on the parties. Heidelberg Ams., Inc. v. Tokyo Kikai Seisakusho, Ltd., 333 F.3d 38, 41-42 (1st Cir. 2003) (finding a significant burden where a nonparty subpoena "encompasse[d] a decade's worth of material" and asked for "all documents received, reviewed or generated by [the non-party]" relating to "any type of business affiliation with [a named party].").

The underlying litigation concerns antitrust issues surrounding the manufacturing and sale of hospital beds and specialty beds. Accordingly, proper discovery is limited to requests reasonably calculated to lead to the discovery of admissible evidence related to those products. See Fed. R. Civ. P. 26(b)(1). Plaintiff's own repeated mention of "Hospital Beds, Specialty Beds, and Architectural Products" in the Subpoena seems to concede that those are the products at issue. See Metts Aff, ¶ 2, and Ex. "A" thereto. Bain has produced all such documents, as well as all documents that relate generally to the concepts of joint incentives or bundling, without reference to any particular product. Bain has also produced summaries of all engagements undertaken at any time within the twenty-year time frame for Hillenbrand.

Bain has not provided documents limited to the subject of funeral services and products, such as caskets, cremation urns and funeral home financial services, or those limited to medical devices, such as surgical equipment, pumps and patient monitors, other medical technologies or in-patient IT solutions. These documents do not relate in any way to the underlying litigation, nor can Plaintiffs explain how documents relating to caskets or medical devices and technologies will lead to the discovery of admissible evidence regarding beds. Simply put, information that these types of documents will generate have nothing to do with the issues in the pending litigation and therefore do not fall within the proper scope of discovery. Fed. R. Civ. P. 26(b)(1). Especially where Bain, a non-party, is the target of these overbroad requests, it is appropriate to restrict the scope of discovery. See Blount International Ltd., 124 F.R.D. at 526.

The present case is exactly the one contemplated by Rule 45's protections. Despite Bain's complete production of documents relating to the underlying litigation, Plaintiff has issued repeated demands for more and more information, each necessitating a new review of two decades worth of documents. Five months after issuing its Subpoena, Plaintiff now seeks

production of several brand new categories of information. These continued demands are not only time-consuming, but disruptive to Bain's business. Plaintiff has suggested in correspondence that Bain can experience no burden in responding to the Subpoena, because it passes its costs to Hillenbrand per its engagement letter. See Metts Aff., ¶ 9, and Ex. "H" thereto. Plaintiff ignores, however, the potential strain -- even harm -- to Bain's client relationships if it is required to make a wholesale production of its clients' records, without regard to their relevance to the litigation with respect to which they are requested.

Bain has provided all documents that relate to the underlying litigation. Any further burden imposed by continuing demands for documents unrelated to the litigation simply cannot justify the additional burden, both in terms of disruption and client relations, that would result.

## CONCLUSION

Pursuant to Federal Rule of Civil Procedure 45(c)(3)(A), Bain asks this Court to modify the Subpoena to include only requests for documents related to Hospital Beds, Specialty Beds, and/or Architectural Products -- categories identified by the Plaintiff itself as related to the litigation -- and to relieve Bain from any further demands for production by the Plaintiff.

Respectfully Submitted,

BAIN & COMPANY

By its attorneys,

_____
Amanda J. Metts (BBO# 639850)
McDermott Will & Emery LLP
227 W. Monroe
Chicago, IL 60606
(312) 984-7748

Neal E. Minahan (BBO# 661371)
McDermott Will & Emery LLP
28 State Street
Boston, MA 02109
617.535.4481

### CERTIFICATE OF SERVICE

I, Neal E. Minahan, certify that on August 31, 2005, I caused a true copy of this document is to be served via Federal Express as follows:

Shari Fleishman Esfahani, Esq.
Akin Gump Strauss Hauer & Feld LLP
Robert S. Strauss Building
1333 New Hampshire Avenue, N.W.
Washington, D.C. 20036-1564

_____
Neal E. Minahan

BST99 1471274-3.054168.0065